UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY THOMAS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF CONCORD, et al.,<br><br>    Defendants. | Case No. 18-cv-07484-JD<br><br>**ORDER RE SUMMARY JUDGMENT**<br>Re: Dkt. No. 63 |

This order resolves defendants' motion for summary judgment and/or partial summary judgment. Dkt. No. 63. The parties' familiarity with the record is assumed.

## DISCUSSION

### I. EXCESSIVE FORCE CLAIM

The Court previously rejected defendants' main summary judgment argument that the "key cell phone video" clearly shows that Officer Savage "acted reasonably in trying to lawfully arrest Plaintiff." Dkt. No. 72. To the Court's eye, the video "did not capture the salient events in sufficient detail to conclude that there are no genuine disputes of fact about the reasonableness of Officer Savage's conduct as he arrested plaintiff." *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

It is true that plaintiff Thomas does not dispute the lawfulness of the arrest itself. *See* Dkt. No. 65 at 2 n.2. Even so, the Fourth Amendment and its "reasonableness" standard placed limits on the amount of force the police officers could lawfully use in the course of arresting Thomas. *Graham*, 490 U.S. at 395. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake," and "careful attention" must be paid to "the facts and

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396 (some quotations and citations omitted). "As in other Fourth Amendment contexts, . . . , the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (citations omitted).

Defendants' summary judgment Exhibit I, a cell phone video, shows the denouement of Thomas's arrest. The video was taken from some distance and has the shaky effects of a handheld camera. The view is obscured at times by a pole or people's backs, and the camera was not always pointed in the right direction, so that the video does not provide a continuous view of what happened between Thomas and the police officers. The video is not clear enough to rule out plaintiff's allegations of excessive force.

It is undisputed that Officer Savage was at the scene to arrest Thomas for two misdemeanor crimes: domestic battery and damage to a communication device with intent to prevent help. It is also undisputed that when Officer Savage first approached Thomas at the gas station (without any apparent back-up), Thomas was holding a tool in his hand, which he dropped after Officer Savage pointed his firearm at him. The video shows that after Officer Savage deployed his Taser at Thomas, Thomas takes off running and Officer Savage chases after him.

Immediately before the actual arrest, Thomas and Officer Savage are seen running down an empty residential street. When Officer Savage catches up to Thomas, Thomas puts his visibly empty hands up and gets down on his knees. At this point, Thomas is no longer trying to evade arrest by flight, and does not appear to pose a threat to the officer. Nevertheless, because plaintiff did not heed a command to "get on your face," at the 1:20 mark in the video, Officer Savage "grabs Plaintiff's right arm." Dkt. No. 63 at 10. Seconds later, Corporal Blakely, who had just arrived at the scene, grabs plaintiff's left arm. *Id*. Officer Savage "pushe[d] [plaintiff's] torso towards the ground." *Id*. at 10-11. In plaintiff's telling, which the video does not clearly prove or disprove, "Officer Savage appears to be pushing/applying pressure and bodyweight on

Mr. Thomas's head and neck area while both of his knees and bodyweight appear to be on Mr. Thomas's back." Dkt. No. 65 at 5. His right knee comes off, but his left knee and left hand remain pushing and applying pressure, "for a total of 21 seconds of continuous downward pressure to the head and neck area while Mr. Thomas's head was on the pavement/cement." *Id*. at 5-6. As plaintiff correctly notes, Thomas is "still on the ground when the . . . video stopped recording," and because the video is not clear, the Court must credit plaintiff's contention that at the end of the recording, it appears Officer Savage and Corporal Blakely are continuing to "plac[e] their knees on the back of Mr. Thomas or putting pressure on [his] back." *Id*. at 6. Defendants say that while all of this was unfolding, Thomas was "pushing up off of the ground," Dkt. No. 63 at 7, resisting being handcuffed, but that too is not clearly visible on the video. Thomas contends that he was seriously injured because of the pressure exerted on him by the officers that day, and he has submitted evidence that he was medically diagnosed as having suffered a "large left sided C5/6 disc herniation causing some cord compression on the left, but severe left sided foraminal stenosis." Dkt. No. 65-2 (Ex. 10) at ECF p. 84.

Overall, this is not a record that warrants summary judgment for defendants on the issue of the reasonableness of the force used by Officer Savage. The video evidence does not demonstrate that there are no genuine disputes as to any material fact, and a jury would be required to determine the full nature of the force exerted on plaintiff and whether that was reasonable in light of the facts and circumstances of this case. Viewing the evidence in the light most favorable to Thomas, a reasonable jury could find that the officers' use of force here was excessive.[1] In reaching this conclusion, the Court is mindful that while "not every push or shove, even if it may

---

[1] The video evidence submitted by defendants was the most important to the Court's analysis and by itself supports the denial of summary judgment on the reasonableness issue. As such, defendants' evidentiary objections to the expert declaration submitted by plaintiff are overruled as moot. Dkt. No. 66 at 14-15. The same goes for defendants' objections to plaintiff's exhibits 2 (a police report) and 5 (a call history report) -- those documents were not material to the Court's analysis. Defendants' objections to plaintiff's Mercy General Hospital medical records as irrelevant and prejudicial are overruled. Defendants' hearsay and authentication objections to those medical records are also overruled. The records were attached to an affidavit from the custodian of records (*see* Dkt. No. 65-2 at ECF p. 80), and the contents of the records could be admitted into evidence at trial in a variety of ways. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.").

seem unnecessary in the peace of a judge's chambers is a violation of the Fourth Amendment, it is equally true that even where some force is justified, the amount actually used may be excessive." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (quotations and citations omitted).  Also, the reasonableness of a particular use of force is "ordinarily a question of fact for the jury," *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997), and so summary judgment is to be granted sparingly in cases alleging excessive force. *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013).

In days gone by, this case would almost certainly have been on its way to a jury trial, including on the issue of qualified immunity.  Qualified immunity is "an immunity from suit," *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted), and it cloaks public officials unless "(1) the facts adduced constitute the violation of a constitutional right; and (2) the constitutional right was clearly established at the time of the alleged violation." *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016).  "The first prong 'calls for a factual inquiry' while the second is 'solely a question of law for the judge.'" *Shen v. Albany Unified School District*, 436 F. Supp. 3d 1305, 1309 (N.D. Cal. 2020) (quoting *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010)).  "[B]oth prongs must be satisfied for a plaintiff to overcome a qualified immunity defense." *Id*. (quoting *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017)).  Under either prong, courts "may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must instead "view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

Where, as here, a plaintiff has shown that there is a question of fact about the reasonableness of the force used by police officers to arrest him, earlier cases would have readily supported the conclusion that the factual disputes on the excessive force issue also precluded summary judgment for the officer defendants based on qualified immunity. *See*, *e.g.*, *Lolli v. Cnty. of Orange*, 351 F.3d 410, 421-22 (9th Cir. 2003) ("If Lolli's version of the facts ultimately prevails, there is a reasonable likelihood that the officers would not be entitled to qualified immunity."); *Liston*, 120 F.3d at 976 (noting "that a number of our recent cases have held that in Fourth Amendment unreasonable force cases, . . . the qualified immunity inquiry is the same as

4

the inquiry made on the merits."). In doing so, courts sometimes focused on principles in assessing the second prong of the qualified immunity inquiry, *i.e.*, whether the constitutional right was clearly established at the time of the alleged violation. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) ("In assessing the state of the law at the time of Blankenhorn's arrest, we need look no further than *Graham*'s holding that force is only justified when there is a need for force.").

The legal circumstances have changed. Our circuit has expressly noted that the United States Supreme Court "has reversed a number of federal courts, including ours, in qualified immunity cases because we failed to abide by the longstanding principle that 'clearly established law' should not be defined at a high level of generality." *Longoria v. Pinal Cnty.*, 873 F.3d 699, 704 (9th Cir. 2017) (quoting *White v. Pauly*, 137 S.Ct. 548, 551-52 (2017) (per curiam)) (some quotations omitted); *see also Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (per curiam) ("This Court has repeatedly told courts -- and the Ninth Circuit in particular -- not to define clearly established law at a high level of generality.") (quotations and citations omitted); *City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 503 (2019) (per curiam) ("Under our cases, the clearly established right must be defined with specificity. . . . That is particularly important in excessive force cases[.]"). Under the second prong of the qualified immunity inquiry, "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it." *City & Cnty. of San Francisco, Cal. v. Sheehan*, 575 U.S. 600, 611 (2015) (quotations omitted). This "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). And while "general statements of the law are not inherently incapable of giving fair and clear warnings to officers[,] . . . the general rules set forth in '*Garner* and *Graham* do not by themselves create clearly established law outside an 'obvious case.'" *Kisela*, 138 S.Ct. at 1153.

This is not an "obvious case" in which the rule in *Graham* -- "that force is only justified when there is a need for force," *Blankenhorn*, 485 F.3d at 481 -- is sufficient to satisfy the second prong of the inquiry to overcome qualified immunity. This is instead a relatively close case, albeit

5

1    one that still would have gone to the jury had it not been for the officers' qualified immunity.
2    Among other things, even under plaintiff's version, he was indisputably uncooperative in his
3    arrest, holding a tool that could have been used as a weapon at the outset of his encounter with
4    Officer Savage and running away from him.

5    And plaintiff has failed to identify any precedent that "squarely governs" the specific facts
6    at issue. *See Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019); *Shafer*, 868
7    F.3d at 1117-18 (officer entitled to qualified immunity because plaintiff "fail[ed] to identify
8    sufficiently specific constitutional precedents to alert [the officer] that his particular conduct was
9    unlawful"). *Ventura v. Rutledge*, 978 F.3d 1088 (9th Cir. 2020), is illustrative. There, the circuit
10   affirmed the district court's conclusion that a police officer was entitled to qualified immunity
11   because "no controlling precedent had 'clearly establish[ed] that [plaintiff's] right under the
12   Fourth Amendment to be free from the excessive use of deadly force by police would be violated
13   when he was shot and killed as he advanced toward an individual he had earlier that day assaulted,
14   while carrying a drawn knife and while defying specific police orders to stop." *Ventura*, 978 F.3d
15   at 1090. Similarly here, Officer Savage is entitled to qualified immunity because no controlling
16   precedent had clearly established that Thomas's right under the Fourth Amendment to be free
17   from the excessive use of force by police would be violated when Thomas was subjected to a
18   minimum of 21 seconds of pressure on his head, neck and back as he remained on his knees with
19   his hands up, but was refusing to comply with police orders to "get on his face."

20   To be sure, a policy argument can be made that close cases like this one should be tried
21   before a jury made up of community members. But controlling precedent mandates that Officer
22   Savage is protected by the quality immunity doctrine, and so judgment must be entered against
23   Thomas on his excessive force claim.

24   **II.    DENIAL OF MEDICAL CARE CLAIM**

25   Under the Fourth Amendment, officers must provide objectively reasonable medical care
26   after an arrest. *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1098-99 (9th Cir. 2006).
27   The Fourth Amendment does not, however, require an officer to "provide what hindsight reveals
28   to be the most effective medical care for an arrested suspect." *Id*.

6

1   Plaintiff's arguments and evidence for this claim are too thin and sketchy to create a
2   genuine dispute of material fact that the officers acted in an objectively unreasonable manner as to
3   his post-arrest medical care. *See*, *e.g.*, Dkt. No. 65-2 at ECF pp. 14-15 (stating that after his arrest,
4   he "hurt all over" but his wrist hurt in particular because Officer Savage was "lifting me up by
5   them"); *id*. at ECF p. 17 (Q: "Did you tell anybody, Officer Savage or anybody at the jail that you
6   believe you suffered any neck injury that evening?" A: "No, I didn't.").

7   The evidence submitted by plaintiff does not specify when in the course of his arrest and
8   detention he sustained an injury requiring medical treatment. Nor does it establish that a
9   reasonable officer in defendants' position would have been aware that Thomas needed medical
10  attention, or the medical care that should have been provided. It is also undisputed that the
11  officers did call an ambulance to the scene. *See* Dkt. No. 65-2 at ECF p. 13. Consequently, even
12  viewing the evidence in the light most favorable to plaintiff, judgment must be entered against
13  plaintiff on his denial of medical care claim as well.

### III. MUNICIPAL LIABILITY CLAIMS

On the issue of municipal liability, plaintiff has made only the conclusory argument that the City of Concord "fail[ed] to train its employees . . . to the level of actionable 'deliberate indifference' where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Dkt. No. 65 at 18 (quoting *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Plaintiff has submitted no evidence of a custom, pattern or practice, or any other evidence that "through its omissions [the City of Concord] should be held responsible for the constitutional violations of its employees." *Lolli*, 351 F.3d at 415. "[E]vidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy." *Blankenhorn*, 485 F.3d at 484-85. Judgment will be entered against plaintiff on his municipal liability claims too.

### IV. STATE LAW CLAIMS

The "doctrine of qualified immunity does not shield defendants from state law claims." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013). However, "in the

7

usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quotations and citation omitted); *see also* 28 U.S.C. § 1367(c)(3).

The Court sees no reason to depart from this rule, especially where proceeding in state court on his state law claims may afford plaintiff the opportunity for a jury trial. Having disposed of all of plaintiff's federal claims in this case, the Court consequently declines to exercise supplemental jurisdiction over the state claims and dismisses them without prejudice.

## CONCLUSION

Plaintiff's state law claims are dismissed without prejudice. Judgment will be entered against plaintiff on his federal claims and the case will be closed.

**IT IS SO ORDERED.**

Dated: June 16, 2021

JAMES DONATO
United States District Judge